### Alice L. Redman, In Equity

*vs.*

### Asenath H. Achorn and Edward Bryant Company.

### Knox.    Opinion February 26, 1926.

A deed conveying an interest in real estate, which was procured by concealment and misrepresentation constituting fraud upon the grantor, may be declared null and void in a bill in equity and a reconveyance decreed.

Rents and profits accrued subsequent to such conveyance may also be recovered.

On appeal. A bill in equity seeking the reconveyance of an interest in real estate alleging that the conveyance of such interest was procured from complainant by inducements and fraudulent concealment amounting to fraud, and also to recover a share of the rents and profits. Upon a hearing the bill was sustained and respondent appealed. Appeal sustained and bill remanded.

The case is fully stated in the opinion.

*Ensign Otis*, for complainant.

*Alan L. Bird and Charles T. Smalley*, for respondents.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURIS, BARNES, JJ.

BARNES, J.    Plaintiff, George E. Achorn and Frank B. Achorn, who at his death made his wife, Asenath H. Achorn, his sole devisee, upon the death of their father, Girard Achorn, were the owners in fee of a six acre lot of land in Rockland, which for many years had been used only as a hay field, but which prior to the earliest recollection of any witness in this case had been operated for lime rock and showed in its surface an ancient depression, perhaps twenty feet deep and fifty feet square, long since abandoned as a quarry and grown over with grass.

Girard Achorn died in 1918.    For several years prior to his death he had lived part of the time in a house owned by him and situated on one of three small parcels of his land, but separate and apart from the six acre hay field.

In 1891, defendant, Mrs. Achorn, was married to Frank B. Achorn, and from April to October of that year her husband and she lived with his father, in his house, where she took care of him.    At intervals thereafter, when the father felt the need of care, he lived with his daughter, the plaintiff, in Thomaston, with the defendant or with a sister, Mary Allen, until in 1914, when, according to the testimony of defendant, Mrs. Achorn, the plaintiff brought him to the Frank B. Achorn home, where he lived with his son until his death in 1918. From the time of his father's death, Frank B. Achorn harvested the hay on the lot with which we are concerned and paid the taxes assessed thereon, until the death of the latter, in December, 1922. He also paid the expenses of the last sickness and burial of Girard Achorn.

At some time prior to October 12, 1921, defendant's husband learned that the six acre field contained commercial lime rock in quality and quantity of great value, and on that date, through his attorney, he obtained from the plaintiff a deed of her undivided share of the field, the consideration for the same being services rendered to the deceased in his lifetime and monies paid since his death.    And thereafterward, claiming that then for the first time she knew the six acre field to be of value as a source of lime, plaintiff brought her bill in equity against Asenath H. Achorn, who had acquired the field by will of her husband, and the Edward Bryant

Company, a corporation manufacturing lime, which has been operating a quarry on the six acre lot, by virtue of a lease from Frank B. Achorn, and has paid for about 200,000 casks of lime obtained therefrom in the first year of its operation.

Allegations of the bill that are in dispute are that Frank B. Achorn, before he acquired plaintiff's title to the land, had informed himself and knew that it was of value, as a source of lime, greatly in excess of its value as a hay field; that he failed to impart this knowledge to plaintiff, but, on the other hand, treating with her as if its value was only that of six acres of hay land, secured from her the deed to the lot when it was his duty to appraise her of its greater value, and hence that by fraudulent concealment and misrepresentation he worked a fraud upon her. If her bill is sustained, she prays for a reconveyance of the premises upon payment, on her part, of one third of the amount paid by Frank B. Achorn on account of Girard Achorn, and that her deed to said Frank B. Achorn be declared void.

The cause was heard by the sitting Justice, who sustained the bill and decreed, "That the deed of Alice L. Redman to Frank B. Achorn, dated October 12, 1921, as set forth in complainant's bill is colorable and fraudulent, null and void.

"The said Asenath H. Achorn is hereby perpetually enjoined from making any conveyance of said premises described in said deed to any party other than the complainant.

"That the said Asenath H. Achorn is hereby ordered and required to make, execute and deliver a good and sufficient deed of release of said premises to the complainant forthwith.

"That the said Edward Bryant Company as Trustee shall immediately prepare and present to this court a full statement of all the monies paid to the said Frank B. Achorn and to Asenath H. Achorn and to any other parties under the terms of a lease of said premises dated October 15, 1921.

"That the said Asenath H. Achorn as executrix of the estate of said Frank B. Achorn and in her own behalf account for and pay to said Alice L. Redman immediately a sum equal in amount to one-third of each and every payment heretofore made by the said Edward Bryant Company on the aforesaid lease, together with interest at six per cent. on each instalment so paid from the day of payment of such instalment to the day of payment in fulfillment of this decree."

From the decree of the sitting Justice appeal was taken in due course.

This court must therefore determine the validity of the conclusions set forth in the decree upon the facts proven and the law applicable to the case.

Careful reading of the evidence satisfies the court that before he moved to secure a deed of plaintiff's share of the field defendant's husband knew that the land had a value greatly in excess of that which he represented to be its value and that he concealed this knowledge from her.

He had begun to deal with the lime manufacturers, the Bryant Co., in September or the very first days of October, 1921, and three days subsequent to the date of the deed from plaintiff he executed the lease in evidence, to his great profit, if he and his devisee may hold two thirds of the return from the lime rock.

Some testimony was introduced to the effect that there was an agreement that Frank B. Achorn should care for and properly bury the father and in return therefor should have upon request deeds of the real estate left by him, but this was by no means satisfactorily proven.

Nevertheless, he sought to obtain plaintiff's title to the six acre field in return for such advances, a grossly inadequate consideration, and convincing proof of fraudulent purpose on his part.

Of the value of the land, except as a hay field, plaintiff had no knowledge. He approached her as proceeding without the guidance of the Probate Court to settle a part of the affairs of the deceased. He had investigated and knew that the property sought was of far greater value than a six acre hay field. It was his duty under all the circumstances, before driving a trade, to impart that knowledge to her. Even if no confidential relations exist, the intelligence, experience, age and mental condition of the parties may vary the rule that it is incumbent on every man to investigate and know the value of land which he is selling. In this case defendant's husband assumed to deal with his sister in a confidential relation and he should have made a full and truthful disclosure of all facts material to the transaction.

"Catching bargains with heirs, reversioners and expectants" is a type of frauds cognizable in equity, and classified as such since the day of Lord Hardwicke.

It is objected that had the plaintiff attempted to pursue a remedy at law she might have failed to recover. This objection comes late

and cannot avail, for we conceive that the statutes confer equity jurisdiction for relief in just such a case as this.

The defense of laches is advanced; but from the evidence, considering the ignorance of law and legal procedure manifest in the plaintiff, and the further fact that much time might prudently be consumed in communicating with her brother, in far away Panama, who was a part owner, was interested and might well be consulted, this defense fails.

The deed from plaintiff must be held void, and defendant, Asenath H. Achorn, should reconvey an undivided third interest in the property to the plaintiff, upon payment to Asenath H. Achorn, as executrix of her husband's will, of one third of the sum of all payments proven to have been made by her late husband for the account of Girard Achorn.

It does not yet appear whether the defendant company paid stumpage under the lease to defendant, Achorn, in her capacity as executrix, or to her as devisee and owner of the field.

To aid the court in determining this point decree should issue requiring said company to account to the court as decreed by the sitting Justice; and further that defendant, Asenath H. Achorn, account for and pay to plaintiff a sum equal in amount to one third of each and every payment heretofore made by the said Edward Bryant Company on the aforesaid lease to Asenath H. Achorn in her individual capacity, together with interest at six per cent. on each instalment so paid, from the day of payment of such instalment to the day of payment under the decree of court.

Such sums, if any, as have been paid by said company to Asenath H. Achorn, in her capacity as executrix, cannot be reached under this bill, and in that particular the decree of the sitting Justice cannot be sustained.

The cause must therefore be remanded to the court below, for decree, upon further information, in accordance with this opinion. The entry here will be

*Appeal sustained.*